**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION**

**CRIMINAL NO.  2:08CR27**


**UNITED STATES OF AMERICA**      )
                                  )
                                  )
          **VS.**                 )      **MEMORANDUM AND**
                                  )        **O R D E R**
                                  )
**DONALD STEPHEN SCOTT**          )
_____   )


**THIS MATTER** is before the Court on Defendant's motions to

suppress and for a second extension of time in which to submit additional

memoranda on the suppression issues.  For the reasons that follow, both

motions are denied.


## I.  BACKGROUND

On August 5, 2008, the Defendant was charged with knowingly

transporting and shipping in interstate and foreign commerce through the

use of a computer a visual depiction of a minor engaging in sexually

explicit conduct, in violation of 18 U.S.C. § 2252(a)(1) (Count One);

knowingly receiving visual depictions of a minor engaging in sexually

explicit conduct that had been shipped and transported in interstate and foreign commerce by computer, in violation of 18 U.S.C. § 2252(a)(2) (Counts Two through Fourteen); and knowingly possessing a computer hard drive containing visual depictions of a minor engaging in sexually explicit conduct that had been shipped and transported in interstate and foreign commerce, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Fifteen). **Bill of Indictment, filed August 5, 2008.**

After his arraignment on August 20, 2008, the Defendant filed a motion to suppress the evidence seized from his computer. **Defendant's Motion to Suppress Evidence, filed September 26, 2008**. The Government filed a response in opposition on October 8, 2008. **Government's Memorandum in Opposition to Defendant's Motion to Suppress, filed October 8, 2008.** An evidentiary hearing was held on October 10, 2008, at which time testimony was taken and arguments of counsel were presented.[1] At the close of the hearing, the Court permitted counsel 10 days in which to submit supplemental memoranda. On October 17, 2008, Defendant moved for an extension of the 10-day period, up to

---

[1] At the hearing, counsel for the Defendant presented the Court with a memorandum in support of his motion to suppress. A review of the docket record shows that this memorandum has not been filed.

and including November 7, 2008; the Court granted the motion in order to allow Defendant an opportunity to obtain a transcript of the hearing.

**Order, filed October 24, 2008.** The Court Reporter filed the transcript on October 28, 2008. On November 7, 2008, Defendant filed a second motion for extension of time requesting an additional 14 days to submit the supplemental memorandum due to the fact that Defendant's counsel were involved in a murder trial in state court and were unable to meet the Court's previous deadline.[2] Because the Court finds that Defendant has had more than ample opportunity to file a supplemental memorandum and that the issues raised in the motion to suppress have been heretofore fully briefed and argued, the Defendant's second motion for extension of time is denied.

## II. FINDINGS OF FACT

The Court makes the following findings of fact based on the evidence and testimony presented during the suppression hearing. On or about June 27, 2008, Defendant took his Compaq Laptop ("the laptop") to the

---

[2] It should be noted that Defendant conferred with the Government prior to filing his first motion for extension of time in compliance with the Court's Local Rules. *See* **LCrR 47.1.** It does not appear that Defendant conferred with the Government regarding this second motion for extension of time.

Computer Workshop in Murphy, North Carolina, for repairs and signed a work order authorizing the Computer Workshop to perform the necessary repairs. On the work order, Defendant complained that the laptop shut down when the password prompt appeared which prevented him from being able to log on to the computer. ***See* Defendant's Exhibit 1**. Jack Hodges, a technician with the Computer Workshop, testified at the hearing that he worked on Defendant's computer during a weekend when the shop was closed. ***See* Transcript of Proceedings on Motion to Suppress, filed October 28, 2008, at 5.** Hodges performed a Windows operating repair using a restoration disk supplied by Defendant. ***Id*. at 6.** After Hodges was able to log on to the computer, he installed anti-virus software as part of the repair process. Hodges testified the software discovered viruses that needed to be removed from the laptop. ***Id*. at 7.** Some of the viruses were stored in temporary internet files that Hodges had to access in order to complete the repair work. ***Id*. at 9.** After accessing the first temporary internet file, Hodges observed four or five thumbnail images that appeared to show minor children involved in sexually explicit activity.[3] ***Id***.

---

[3] Hodges testified that a thumbnail image can represent an image that is contained on a website that the laptop has visited. **Transcript, at 10 ("Small images are brought onto your PC into those temporary**

Hodges immediately ceased his repair work on the laptop and notified the owner of the Computer Workshop, Jonathan Fleischer, about the images. *Id*. **at 11-12.**

Fleischer testified he observed one or more of the images and then contacted the Cherokee County Sheriff's Office on Monday morning and reported the discovery to Detective Roger Williams. ***Id*. at 47.** When Williams arrived at the Computer Workshop, Fleischer showed Williams the suspected images of child pornography on Defendant's laptop. ***Id*. at 47-49.** Williams provided Fleischer with a copy of the North Carolina statute which requires computer technicians to report to law enforcement the discovery of any images of minor children engaged in sexually activity found while engaged in authorized repair work on a computer.[4] ***Id*. at 57; Defendant's Exhibit 2.** According to Fleischer, he showed Williams one

_____

files to help that page load later, or when you go back to it, it's more readily accessible to your computer, without having to send them down.").

[4]N.C. Gen. Stat § 66-67.4 (2007) was admitted as Defendant's Exhibit 2. Both Hodges and Fleischer testified that they did not know of this reporting requirement until after receiving a copy of the statute. ***See*** **Transcript, at 13, 58.**

image and then Williams shut the computer down and took the laptop to the Sheriff's Department. *Id*. **at 49.**

Defendant's witness, Matthew Reece, testified as an expert in the field of information technology and computer systems. *Id*. **at 90-92.** Reece testified that the steps taken by Hodges to repair Defendant's laptop were widely accepted practice in the field of computer repair. *Id*. **at 97-98.**

Defendant also testified at the hearing. He stated he was employed as a licensed real estate agent for Century 21 at the time he took his laptop to the Computer Workshop for repairs. *Id*. **at 69.** Defendant testified that on or about June 30, 2008, he called the Computer Workshop to inquire about the status of the repair of his laptop and was informed that there was still a virus scan being performed on the computer. *Id*. **at 72.** The following day, Detective Williams, along with Detective Teasdale, came to the Century 21 office where Defendant was working that day. *Id*. **at 72-73.** Williams recognized Defendant from a Division of Motor Vehicle photo and asked Defendant if he would accompany them to the Sheriff's Department. *Id*. **at 73.** Defendant agreed and informed one of his associates that he would probably be out of the office for the rest of the afternoon. *Id*.

Defendant was not informed nor did he inquire as to why he was being asked to go to the Sheriff's Department. *Id*.

Defendant followed the detectives in his own car to the Sheriff's Department. *Id*. **at 74.** After arriving there, the detectives asked Defendant to follow them into what Defendant believed was an interview room. *Id*. Detective Williams testified that he informed Defendant that the door to the interview room was not locked, that he was free to leave the interview room at any time, and that he did not have to answer any of the detectives' questions. *Id*. **at 101.** Williams also testified that he completed an interview log in an effort to gather basic information about Defendant, such as his name, address, age, and occupation, and the Defendant appeared to be coherent and understood and responded appropriately to every question asked. *Id*.

Williams testified that after the "preliminaries," he asked Defendant if he knew the reason he was asked to come to the Sheriff's Department for the interview. *Id*. **at 101-02.** Defendant testified that he thought he was probably there because there were some things on the computer that should not have been there. *Id*. **at 76.** Defendant testified that he knew Williams worked on cases involving computer crime, specifically cases

dealing with "underage activities," from articles that had appeared in the local newspaper.  ***Id*. at 75-76.**

Defendant testified that during the course of the interview, he admitted there were pornographic images of children on his computer.  ***Id*. at 78.**  Defendant signed a consent form allowing the Cherokee County Sheriff's office to search the contents of his computer.  ***Id*. at 103; Government Exhibit 1.**  The consent form, signed by Defendant, informed him that he had been advised of his right to refuse to consent to search the computer, and that by signing the form he authorized the Sheriff's Office "to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals."  **Government Exhibit 1.**

Williams testified that a search of Defendant's computer was performed the evening after Defendant completed the consent to search form.  **Transcript, *supra*.**  Williams also testified that prior to the search of the computer, he had seen only one image depicting child pornography on Defendant's laptop during his visit to the Computer Workshop by the shop's owner Jonathan Fleischer.  ***Id*.**  Williams testified that he did not recall informing Defendant that he had seen the pornographic image on

Defendant's laptop, rather he told Defendant that he had an indication that there might have been some child pornography on his computer. *Id*. at **102.**

### III.  DISCUSSION

Defendant moves to suppress "all evidence seized from his personal computer as well as all evidence derived from the seizure of that computer," arguing that absent exigent circumstances, the Fourth Amendment requires law enforcement to first obtain a warrant before searching or seizing Defendant's laptop. **Defendant's Memorandum, at 1**.

The Fourth Amendment protects individuals against unreasonable searches and seizures. **U.S. Const. amend. IV.**  First, there is no question Defendant's laptop was in the possession of law enforcement after it was seized by Detective Williams from the Computer Workshop.  This conclusion yields two relevant issues for the purpose of Fourth Amendment analysis:  (1) did this seizure result in the discovery of evidence incriminating to Defendant in violation of the Fourth Amendment; and (2)

did law enforcement perform a warrantless search of Defendant's computer.

The testimony from the suppression hearing shows that Detective Williams responded to the Computer Workshop after its owner reported that he had discovered images of children who appeared to be engaged in sexual acts on Defendant's computer while performing repair work that had been authorized by the Defendant. Defendant admits that he authorized the Computer Workshop to perform all necessary work to repair the computer.[5] The evidence further shows that after Williams observed the lone image that appeared to depict child pornography at the computer store, he shut the computer down, and took possession of Defendant's computer. According to Williams' testimony, he nor any other officer turned the computer on or conducted any search of the computer until the day after Defendant signed, knowingly and voluntarily, a consent to search form. Thus, the seizure of the computer resulted in the discovery of no

---

[5] Although Defendant contends that Hodges and/or Fleischer exceeded the scope of the written repair authorization, this argument is without merit. Defendant's own expert testimony revealed that Hodges and Fleischer were generally acting within the realm of standard practice for computer professionals conducting a repair. *See* **Transcript, at 98 ("The same steps that he when through would be the same ones I would go through.").**

incriminating evidence. Defendant's argument that officers illegally obtained incriminating evidence as a result of the seizure of the computer is overruled.

Defendant also contends that a search occurred when Williams was shown a single image of what appeared to be child pornography at the Computer Workshop without first obtaining a search warrant.[6] The remaining question, then, is whether this lone observation of an image on Defendant's computer constitutes a search within the meaning of the Fourth Amendment. The Court concludes that it does not.

"The Fourth Amendment protects against unreasonable searches and seizures by Government officials and those private individuals acting as 'instrument[s] or agent[s]' of the Government." ***United States v. Jarrett***, **338 F.3d 339,344 (4ᵗʰ Cir. 2003) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971)).** The "Government must do more than passively accept or acquiesce in a private party's search efforts" in order to violate the Fourth Amendment. ***Id.***

---

[6]These facts clearly show that there was no seizure of Defendant's laptop until after Detective Williams observed this single image.

During the suppression hearing, counsel for Defendant clearly abandoned any argument that Hodges or Fleischer were somehow acting as "instruments or agents" of the Government. Counsel instead argues that the officer's actions in responding to Fleischer's call, that is, viewing the single image that prompted Fleischer's call, constituted an illegal search. However, there was no evidence presented at the hearing that Williams forced Fleischer to boot the computer and reveal images of child pornography contained therein. Rather, Williams asked Fleischer to show him what he had seen. Additionally, the fact that Williams shut down the computer at that point and conducted no search until after he had obtained written consent from the Defendant further undercuts this argument.

A further consideration "is whether, after the private search, the person continues to possess a reasonable expectation of privacy" in the computer. ***United States v. Grimes*, 244 F.3d 375, 383 (5th Cir. 2001) (citing *United States v. Paige*, 136 F.3d 1012, 1020 (5th Cir. 1998)).** In *Grimes*, the defendant's wife took his computer to a computer repair store and filled out a form authorizing the store to repair the computer. The work order stated that the computer would not "boot up." ***Id.* at 377.** The computer technician began repairing the computer within the scope of the

authorization, and while doing so, discovered multiple images of child pornography.  He notified his supervisor who, after observing the images, reported the discovery to law enforcement  *Id*.  Law enforcement responded, observed the images, and then arrested the defendant. Defendant moved to suppress the images found on his computer, "contending that they were seized in violation of the Fourth Amendment." ***Id*. at 383.**  In rejecting the defendant's arguments, the Fifth Circuit concluded that "[t]he pre-warrant images viewed by [law enforcement] were discovered during a private-party search, completed following standard company practice; were within the scope of the original private-party search; and were in an area where [the defendant] no longer possessed a reasonable expectation of privacy."  ***Id*. (citing *United States v. Hall*, 142 F.3d 988 (7th Cir. 1998) (similar holding under similar facts)).**  In the present case, the Court finds these cases persuasive.

However, even assuming *arguendo* that the officer's action in viewing the image did constitute an unconstitutional search of Defendant's computer, the verbal information made known to Williams would have inevitably led to the discovery of the images through lawful means. Fleischer reported to Williams that there were multiple images of child

pornography on a computer belonging to Defendant.  Williams interviewed

both Fleischer and Hodges at the Computer Workshop and they each

confirmed the existence of images of child pornography on the laptop.  The

inevitable discovery rule allows for the admission of evidence illegally

seized during a search.  The Government bears the burden of proving "by

a preponderance of the evidence that the information ultimately or

inevitably would have been discovered by lawful means[.]"  ***Nix v.***

***Williams***, **467 U.S. 431, 444 (1984); *see also United States v. George*,**

**971 F.2d 1113, 1121 (4th Cir. 1992).**  Williams received information

concerning the existence of the images from two individuals that had been

granted lawful access to the contents of Defendant's computer.  This

information alone, without more, would have supported the issuance of a

search warrant for the contents of the laptop which would have led to the

discovery of the images.  Further, Defendant freely accompanied

Detectives Williams and Teasdale to the Sheriff's Department where he

was clearly informed that he was under no obligation to remain at the

Sheriff's Department and that he did not have to answer any questions.

During the ensuing conversation, Defendant voluntarily disclosed that there

were things on his computer that should not have been there and,

ultimately, confessed that there were multiple images of child pornography on his laptop.

Based on the foregoing reasons, the Court concludes that Defendant's motion to suppress must be denied.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's second motion for extension of time is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's motion to suppress is **DENIED.**

Signed: November 17, 2008

Lacy H. Thornburg
United States District Judge